**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEROLD GURLEY,** | ) | **CASE NO. 1:24CV2203** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **CARLOS VELEZ,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**<u>CHRISTOPHER A. BOYKO, J.:</u>**

This matter comes before the Court upon the Motion (ECF DKT #31) of Defendant

Carlos Velez for Summary Judgment.  Because Defendant is entitled to qualified immunity, the

Motion is granted.  In addition, the Court declines to exercise supplemental jurisdiction over

Plaintiff Jerold Gurley's state law claims.

## I. FACTUAL BACKGROUND

On December 18, 2023, Plaintiff Jerold Gurley, M.D., a 66-year-old physician, returned

home after a day of performing surgery at the hospital.  He went upstairs to his home office,

logged onto his computer, had a glass of wine and began working on his Ancestry.com family

tree.  Sometime later, Plaintiff went to check on his son, Jack, and found him with a gunshot

wound to his head.  Plaintiff called "911."  The Bay Village Police Department received a call at

6:18 p.m. about a gunshot victim at 30914 Arlington Circle.  Officers Scott Chase, Melissa

Marzan and Garret Hruby were the first to arrive on scene.  Chase was the officer in charge.

Defendant Officer Carlos Velez arrived later.

Plaintiff let the paramedics in and they began to prepare Jack for transport to the hospital.

Neither they nor Chase could find an exit wound.  A gun was located next to the victim's leg.

Chase proceeded to examine the scene.  Plaintiff was in the room and he appeared visibly shaken.  Plaintiff was told repeatedly to leave the room so the officers could do their work. Despite being told to step back and out of the crime scene, Plaintiff swore at the officers and tried to physically push past them into his son's room.  Marzan took out her handcuffs.  Plaintiff threatened:  "Put me in handcuffs and I'll sue you."  (Marzan Body Cam Footage, ECF DKT #36, Exhibit E).  Chase grabbed Plaintiff by the forearms and moved him out of the way.

When Defendant Velez arrived, Marzan informed him about Plaintiff's aggressive behavior and his intoxicated and emotional state.  Defendant personally observed Plaintiff's glassy eyes and slurred speech; but approached Plaintiff politely and introduced himself.  (Velez Deposition, ECF DKT #33 at 50; Velez Body Cam Footage, ECF DKT #36, Exhibit C).  Plaintiff exited his house to get his mail.  Chase told Defendant not to let Plaintiff leave because he had been drinking; because it was important to ensure he would not get hurt; and because the police still needed to talk to him since he was the only other person present.  (Chase Deposition, ECF DKT #34 at 59, 67, 79, 92, 98).  When Plaintiff returned with his mail, Defendant said:  "Just so you know, the detectives need to talk to you, sir." and "I'm not trying to be rude, but you can't leave." (Velez Deposition, ECF DKT #33 at 64).  Plaintiff responded that he was leaving.  (*Id.*). Plaintiff left the house through the garage and closed the door between himself and Defendant. Plaintiff was running and Defendant ran after him.  Plaintiff does not recall going to his mailbox or running away from the house.  (Gurley Deposition, ECF DKT #37-1 at 33-35).  When Defendant caught up with Plaintiff, he jumped on him and tackled him in order to bring him down. (Velez Deposition, ECF DKT #33 at 74-75).  Defendant gave no verbal commands, believing it would be futile to do so.  (*Id.* at 75).  Plaintiff can recall Defendant tackling him,

swearing at him and wrenching his arm in an extremely aggressive and painful manner. (Gurley Deposition, ECF DKT #37-1 at 34-39). Plaintiff buried his hands under his body. Defendant used profanity and utilized a Kimura arm lock[1] for leverage to place his right arm in handcuffs. (*Id*. at 150). Marzan joined in the effort to finally handcuff Plaintiff and place him in a police cruiser. When EMS asked Plaintiff if they could take him to the hospital to get evaluated, he refused medical treatment. Plaintiff was ultimately charged with obstructing official business and disorderly conduct.

As a result of this incident, Plaintiff suffered a brachial plexus injury and a massive rotator cuff tear which required reconstructive surgery. Plaintiff's treating physician, Dr. Louis Keppler, concludes that the rotator cuff tear and brachial plexus injury occurred from the tackle by Defendant. (ECF DKT #38, Exhibit 2). Dr. Keppler also reports that Plaintiff is not capable of resuming his occupation as an operative spinal surgeon. (*Id*.)

On December 18, 2024, Plaintiff filed the instant three-count Complaint: Count I under 42 U.S.C. § 1983 for Excessive Force in Violation of the Fourth and/or Fourteenth Amendment; Count II for Assault and Battery under Ohio law; and Count III for Intentional Infliction of Emotional Distress under Ohio law.

Defendant moves for summary judgment in his favor because he did not violate the law and is immune under Federal Qualified Immunity and Ohio Tort Immunity (R.C. Chapter 2744). Plaintiff responds that Defendant is not entitled to Qualified Immunity on Plaintiff's Excessive Force Claims. The uses of force, including the tackle and the Kimura arm lock, constitute

---

[1]A Kimura arm lock, according to Https://en.wikipedia.org/wiki/Armlock is a double wrist lock applied by controlling the opponent's body, cranking the arm away, putting pressure on the shoulder joint and bringing the arm behind their back.

unreasonable and excessive force in violation of Plaintiff's clearly established constitutional rights.  A reasonable officer would know that tackling and utilizing a Kimura arm lock on an unarmed 66-year-old who simply left his own home where he discovered his son had attempted suicide is a violation of clearly established law.

**II. LAW AND ANALYSIS**

**Civil Rule 56 Standard**

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed. R. Civ. P. 56(c)(I)(a), (b).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine

issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## 42 U.S.C. § 1983

To sustain an action under 42 U.S.C. § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under color of state law; and that the conduct deprived the plaintiff of a federal constitutional or statutory right.  *See Haines v. Saginaw Police Dept.*, 35 F.3d 565 (6th Cir. 1994) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)).  Deprivation of a plaintiff's rights, privileges, or immunities secured by the Constitution and federal laws is the threshold requirement of a Section 1983 action.

## Fourth or Fourteenth Amendment

In Count I of his Complaint, Plaintiff claims a violation of the Fourth and/or Fourteenth Amendment. The U.S. Supreme Court has "always been reluctant to expand the concept of substantive due process" and held in *Graham v. Connor*, 490 U.S. 386, 395 (1989), that "[w]here

-5-

a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998), quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  "All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. at 395.   If the challenged conduct falls within the ambit of the Fourth Amendment, the Fourteenth Amendment claim fails as a matter of law. *See Lewis*, 523 U.S. at 842.

In the opposition to Defendant's Motion, Plaintiff fails to make any argument about Fourteenth Amendment violations.  Under Supreme Court law then, the Court will analyze Plaintiff's claims only under the Fourth Amendment rubric.

In addition, Plaintiff contends that the Bay Village Officers on scene have offered conflicting reasons why he was not allowed to leave his residence on December 18, 2023  — that is:  an on-going investigation; detectives needed to speak with him; his intoxication; and the danger he posed to his own safety.  The Court finds that Plaintiff's arguments and deposition interrogations about the lack of a legitimate basis for detaining him are not germane.  Plaintiff has not claimed false arrest or detention; rather, he only claims excessive force in violation of his clearly established rights.

**Qualified Immunity**

Qualified immunity protects governmental officials from suit as long "as their conduct

-6-

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 5 (2021); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Subjecting officers to the practical and economic risks of lawsuits for uncertain violations of the Constitution would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, C.J.)).

In the Sixth Circuit, courts apply a two-step analysis. First, "whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right[.]" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015). Then, a court must determine whether the right was "clearly established" at the time of the alleged violation such "that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

A right is not clearly established if existing precedent does not place the constitutional question "beyond debate." *Rivas-Villegas*, 595 U.S. at 1. This "usually means the claimant must identify a case with facts similar enough that it squarely governs this one." *Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025). As was stressed in *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018): "This requires a high degree of specificity . . . [C]ourts must not define clearly established law at a high level of generality . . . the specificity of the rule is especially important in the Fourth Amendment context." "In short, officers receive qualified immunity unless they could have "read" the relevant precedent beforehand and "know[n]" that it proscribed their specific conduct." *City and County of San Francisco v. Sheehan*, 575 U.S. 600,

616 (2015).

Plaintiff fails to make the necessary showing.  He points to several cases which are materially distinguishable from the facts before the Court.

In *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013), three officers physically and violently subdued an unarmed, distraught man.  One fell on top of him and delivered "compliance body shots."  Another punched him twice in the face, while a third struck his face, back and ribs up to five times.  One gripped his chin and neck and another knelt on his calves to keep him down.  The officers kept the individual face-down, though subdued, until he made a "gurgling noise."  *Id*. at 958-959.  The pressure applied caused asphyxiation.  "A reasonable officer should have known that subduing an unarmed, minimally dangerous, and mentally unstable individual with compressive body weight, head and body strikes, neck or chin restraints, and torso locks would violate that person's clearly established right to be free from excessive force."  *Id*. at 963.  The *Martin* scenario showed gratuitously violent and unconstitutional force which stands clearly apart from Defendant's conduct in halting and subduing Plaintiff.

Plaintiff also cites to *Landis v. Baker*, 297 F.App'x 453 (6th Cir. 2008) to meet his "clearly established" burden.  In *Landis*, officers submerged the non-threatening plaintiff's face in mud and water, struck him ten times with a police baton and tasered him four times in a matter of seconds.  The court noted that these actions crossed the line to gratuitous assault.  Nonetheless, this is an unpublished decision; and an unpublished decision "cannot create clearly established rights."  *Chaney-Snell v. Young*, 98 F.4th 699, 725 (6th Cir. 2024).

*Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994) does not benefit Plaintiff's position either.

-8-

Adams was allegedly drunk and disorderly, not wearing a seatbelt and refused to be handcuffed. Unlike the use of force endured by Plaintiff, a reasonable officer would know that Adams' constitutional rights were violated when the officer maced him twice more after he was already maced, incapacitated and seated in a car.

In *Shumate v. City of Adrian, Michigan*, 44 F.4th 427 (6th Cir. 2022), the plaintiff did not commit a serious crime, posed no immediate threat to the officer and did not attempt to evade or resist arrest. However, the similarities to Plaintiff's plight stop there. The *Shumate* court found the right to be free from being tased and subjected to physical force (in the alleged form of punching, knee strikes, kicking, and hitting) while not actively resisting and while being non-violent was clearly established as unlawful. This degree of force is light-years away from Defendant's acts of tackling Plaintiff and using an arm lock to compel Plaintiff to give up his hands to be handcuffed.

Defendant would not have known by existing controlling or persuasive precedent that his specific conduct was unlawful. In *VanPelt v. City of Detroit,* 70 F.4th 338, 339-40 (6th Cir. 2023), an officer used reasonable force by tackling a handcuffed suspect after he "took off running." "[I]t is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff v. Gillespie*, 791 F.3d 638, 641 (6th Cir. 2015). Active resistance includes "refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Rudlaff*, 791 F.3d at 641.

Qualified immunity operates in the "hazy border between excessive and acceptable force." *Saucier*, 533 U.S. at 206. "When in such a haze . . . the proper course is to grant summary judgment to the officers, even if the court would hold the officers' conduct

unconstitutional in hindsight." *Rudlaff*, 791 F.3d at 644, citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011); *see Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).

Plaintiff fails to satisfy his burden of showing that Defendant's conduct "violated a right so clearly established that a reasonable official in that position would have clearly understood that he [] was under an affirmative duty to refrain from such conduct." *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004). Conceding the age and physical disparity between Plaintiff and Defendant, Defendant would not have reasonably known that he violated Plaintiff's constitutional rights. Plaintiff refused to remain in the house which was an active crime scene; was distraught, intoxicated or at least suffering a mental episode; refused to obey the officers' directions; ran into the cold December night where he likely placed himself in danger; and once subdued, would not give up his hands to be handcuffed. Under these circumstances and in light of the lack of specific and clear precedent, Defendant was not on notice that tackling Plaintiff and applying a Kimura arm lock could be considered unreasonable and excessive force beyond debate. Defendant is entitled to qualified immunity and summary judgment is granted in his favor on Count I of Plaintiff's Complaint.

**Supplemental Jurisdiction**

By this ruling, the Court has dismissed any federal claim over which it has original jurisdiction. Therefore, the Court in its discretion further declines to exercise supplemental jurisdiction over Plaintiff's state law claims for Assault and Battery and Intentional Infliction of Emotional Distress (Counts II and III). *Stewart v. City of Euclid*, 970 F.3d 667 (6th Cir. 2020); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

### III. CONCLUSION

For these reasons,  the Motion (ECF DKT #31) of Defendant Carlos Velez for Summary Judgment is granted.  Defendant is entitled to qualified immunity and judgment is granted in his favor on Count I of Plaintiff Jerold Gurley's Complaint under 42 U.S.C. § 1983 for Excessive Force in Violation of the Fourth Amendment.  In its discretion, the Court declines to exercise supplemental jurisdiction over Count II for Assault and Battery under Ohio law and Count III for Intentional Infliction of Emotional Distress under Ohio law; and those claims are dismissed without prejudice.


**IT IS SO ORDERED.**

**DATE: 5/19/2026**          s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**